The next case in our call this morning is agenda number 20, Zurich American Insurance Company v. Key Cartage, Inc. Counsel may approach, but we'll wait a minute for the court to settle down. Good morning, Your Honors. May it please the Court, Chris Kentra on behalf of Zurich Insurance Company. As Your Honors know, this case involves an insurance coverage dispute relating to an accident involving a truck that was being operated by an entity known as Key Cartage, Inc. Zurich denied coverage to Key Cartage under a trucker liability policy that it issued to a different entity known as Rose Cartage, Inc. The basis for Zurich's coverage denial is the existence of a reciprocal coverage provision contained in the Zurich policy. The Zurich policy is a standard form ISO trucker's policy that contains a general grant of coverage to permissive users. However, the policy contains an exception to who qualifies as an insured for truckers that fail to provide reciprocal coverage to the named insured under Zurich's policy. So in this case, in light of the fact that Key Cartage's insurance policy did not provide reciprocal coverage to Zurich's named insured, there is no coverage under the Zurich policy for Key Cartage. The First District ruled below that the reciprocal coverage provision violated the, it was void against public policy and violated the omnibus insurance coverage requirements set forth in Section 317 of the Financial Responsibility Laws, which are contained in the Illinois Vehicle Code. It's Zurich's main contention in this case that the First District erred by applying Section 317 of the Financial Responsibility Law to two vehicles that were regulated as motor carriers of property under the Commercial Transportation Law. And this is particularly true when you look at the fact that these are separate statutes that have distinct legislative histories. The Commercial Transportation Law was first adopted by the legislature as the Illinois Truck Act in 1939. When the legislature created the Vehicle Code in 1970, this act was put into the Vehicle Code and it was re-enacted in the Illinois Truck Act. It was re-named the Commercial Transportation Law. It was put in Chapter 18C. Separately, Section 317 of the Financial Responsibility Laws has its origin in the Motor Vehicle Law of 1957. That statute as well was put into the Illinois Vehicle Code in 1970 when the legislature first adopted the Vehicle Code. And if you take a look at the way that these statutes were adopted, it makes clear that the Vehicle Code encompasses, it says, the Code constitutes a consolidated recodification of various early laws and acts, including the Illinois Motor Vehicle Law of 1957. It's our contention that there's no legislative support for the First District's decision that 317 of the Financial Responsibility Law properly applies to motor carriers of property that are governed by the Commercial Transportation Law. And if you take a look at the insurance requirements of these two separate statutes, a simple analysis bears that out. Under Section 317, in addition to having an omnibus insurance coverage requirement, the statute contains certain levels of liability insurance that are necessary in order to fulfill the minimum insurance requirements under the Financial Responsibility Laws. Those requirements include $20,000 of limits of liability for a single injury, $1,000 of limits of liability for a single injury, $40,000 of limits for in the aggregate, and $15,000 for property damage. If you take a look at those provisions and you compare them to the insurance requirements that are set forth under the Commercial Transportation Law, it becomes very apparent that these are two separate realms of regulation. Under the Commercial Transportation Law, you can't obtain a license to operate as a motor carrier of property unless you first comply with the insurance requirements of the statute. You must post proof of liability insurance with a license. You must post proof of liability insurance with the ICC before you can even get a license or registration numbers to operate. But that, doesn't that eliminate the public policy concerns for innocent victims? Judge, that's our exact contention, that the comprehensive regulations that are afforded under the Commercial Transportation Law are entirely different from those under the Financial Responsibility Law, and in and of themselves provide the protection that's necessary for the public. I think it's important to note that it's your position that there are no uncompensated victims in this instance, because both entities have to be covered by, they have to have coverage under the ICC. Absolutely. You cannot qualify as a motor carrier of property unless you first post necessary insurance. But it's also important to know that you can't operate either under ICC regulations unless you have the appropriate insurance on file. So it's not just a matter of posting it and then going about your business. This is a regular and very comprehensive area of regulation that is literally monitored on a daily basis. But if you take a look at those provisions and you compare the minimum insurance requirements under the Commercial Transportation Law with what's afforded in 317, they bear no relationship whatsoever. I mean, you can't operate as a motor carrier of property unless you have at least $750,000 in single occurrence limits if you haul non-hazardous materials. Depending on the nature of the materials you haul, the minimum requirements go up to $5 million. So these different provisions, I think, tell the Court two things. First, the regulatory scheme under 317 is entirely inconsistent with the statute that's been adopted for motor carriers of property. In addition to that fact, there's no legislative support for the First District's determination that 317 should be read into the Commercial Transportation Law. Mr. Kendra, is it your position that even 601B2 of the Financial Responsibility Law ends the argument? Because that's an exemption, isn't it, for vehicles required to file personal liability insurance with the Illinois Commerce Commission? That's exactly true, Your Honor. And it's our contention that the First District's interpretation of 601B2 is contrary to the express language of the statute. In fact, what the First District did was attempt to follow this Court's decision to make a provision in State Farm v. Universal Underwriters and its interpretation of a different provision in 601B, which was 601B6. And in effect, what the First District held was that the exemption afforded to vehicles that are required to file proof of insurance with the Illinois Commerce Commission cannot be given effect unless the insurance requirements there exceed that set forth in the mandatory insurance requirement and they contain an omnibus coverage. But if you look at the plain language of 602B, as you've noted, Your Honor, there is no such requirement. And I think also if you look at the legislative history of these two acts, it becomes very clear that the First District's interpretation of these statutes cannot be defended. The Illinois Vehicle Code was created in 1970. And at that time, the Financial Responsibility Laws were put into it and the Commercial Transportation Laws were put into it. The mandatory insurance requirement of the code was not adopted by the legislature until 1989. So 601A, which mandates mandatory insurance, was adopted at a time when mandatory insurance already existed for commercial truckers. The Commercial Transportation Law already existed. So to believe the First District's interpretation of those sections, you would have to believe that the legislature adopted a duplicative, yet inconsistent regulatory scheme with respect to mandatory insurance, and that it did so without a single word of explanation of what it intended to do. It's our contention that that is just an unreasonable interpretation of these statutes, and obviously the better interpretation here is that 601A has no application to vehicles that are governed by the Commercial Transportation Law because of the express exemption contained in 601B. Your Honors, we've made an argument here which we think is valid based on the First District's interpretation that, in effect, if the First District's interpretation of the First District's ruling is allowed to stand, they've effectively mandated a new insurance requirement for commercial vehicles in Illinois that is not supported by any legislative support or statutory language. In that, that would be a violation of separation of powers. As we've set forth in our briefs, the establishment of public policy is uniquely a legislative function, and courts are not empowered to amend or enlarge statutes. And in fact, what the First District has done is exactly that. Now, the only justification that the First District is given for its ruling is its interpretation and reliance on this Court's prior decision in State Farm v. Universal Underwriters. And I think that the Court here needs to clarify the holding in Universal Underwriters. Is that portion of your argument, Mr. Kendra, related to the fact that I think you've said in your briefs that higher liability insurance requirements will now only be required, you know, the truckers who currently are subject to higher liability insurance requirements will now only be required to carry 20, 40, 15 policies? I think it's related, Your Honor, with respect to that could be an interpretation of the First District's ruling with respect to the requirements of the Omnibus Insurance Coverage Provision under 317. I have to admit, I don't quite understand that argument, because even in that case, why wouldn't the more specific requirements control over the general minimums? Well, Judge, from our perspective, the analysis of specific v. general presupposes a common legislative scheme, and there simply isn't one. You have two separate statutes that govern two separate subject matters. I would also note that the cases that my opponent relies on, the district court, appellate court cases that my opponent relies on, I personally believe have been called into question by this Court's ruling in the State Farm v. Illinois Farmers' decision. In that case, the Court enforced a step-down provision that said while insurance limits under a particular policy may be given at a certain amount to the named insured, it's perfectly appropriate for coverage for permissive users to be restricted to the statutory minimums established by the legislature for permissive users under 317. That's where we think, Your Honor, that there could be a possible application. But the point I was going to make about the State Farm v. Universal Underwriters case is it's our contention that that case was correctly decided on its facts, and each of this Court's cases that follow it were correctly decided on their facts. But the case contains expansive language that's been misapplied by the First District here. The Court in its holding in Universal Underwriters interpreted Section 317 in its reference to the Act. 317 contains a definition for liability insurance policies, and then it says, as that term is used in this Act. And in Universal Underwriters, the Court equated the term Act with the vehicle code. Yet we know that at the time 317 was written by the legislature as part of the law in 1957, there was no Illinois vehicle code. So while the issue before the Universal Court was correctly decided, the language that the Court used is overbroad. And in that regard, we think that that language needs to be clarified in this case so that it's not used as it was used by the First District here to apply provisions of the financial responsibility law to the separately enacted commercial transportation law. I have another point that I think is really important for this Court to focus on in its opinion, and that's that the First District in attempting to comply with prior precedent from this Court misinterpreted the scope of the Zerg policy, and it did so in a very significant way. In the Zerg policy, quote, persons injured by permissive users of trucks would be unable to secure payment for their damages. Yet we know this is not true. I mean, that conclusion is not true under the terms of the policy. The Zerg policy contains a general grant of coverage to permissive users. The exception, the reciprocal coverage provision exception, is limited to truckers. Truckers is defined in the Zerg policy as any person or organization in the business of transporting property for hire. We know in Illinois that you can't qualify for that definition unless you comply with the requirements of the commercial transportation law. You can't in Illinois be in the business of transporting property for hire unless you comply with the commercial transportation law and post the insurance limits required by the ICC. And those limits far exceed those set forth in 317. So it's our position that the First District's, the motivation or basis for its determination that the Zerg reciprocal coverage provision should be void against public policy was that the public was going to be left without protection. But we know that's not true in this case. In this case, there is not an issue of uninsured loss. There's an issue of which insurance policy responds to a loss. The two policies work like they should work. They provide protection for the public and they make sure that coverage is afforded in this context. There's just not coverage afforded under the Zerg policy. Your Honors, respectfully, I'd like to reserve the rest of my time for rebuttal. Thank you, Counsel. You may proceed. Thank you, Mr. Kentra, Mr. McManus. My name is Tom Lucas, and I represent Key Carthage, West Bend Mutual, and Terry Washington in this case. And this case comes to this Court, and it's a case of first impression. And the issue is, does the omnibus requirement found in the financial responsibility law, it's Section 7.317.B.2, apply to commercial trucks? The Circuit Court of Cook County, on cross motions for summary judgment, Judge Kinnaird found that the omnibus requirement was not a requirement for commercial trucks. The First District Appellate Court reversed. And the First District... Zerg's position. Well, because if you look at 601A and B, you look at what that provision is. I mean, it's the basic provision, 601A, that all vehicles operate on the road or to carry insurance, liability insurance, and then sets forth that the insurance policies must contain the statutory minimums found in Section 7.203. And then Section B goes on and exempts certain vehicles from the requirements of that section, 601. And there are six categories, I think, of vehicles. Vehicles that have to comply with ICC filing requirements at 601.B.2. 601.B.6 exempts vehicles that have a license to drive. Vehicles that are covered by liability insurance policies with limits greater than those called for in 601A. So we look at, that's what 601 says. What this Court said in universal underwriters, it considered the same exemption argument. There in universal underwriters, the policy involved a car dealership. The car dealership garage policy didn't contain an omnibus clause. And State Farm had paid a claim by the permissive user was someone who was test driving the car. So State Farm paid the claim and then went after universal underwriters, the garage liability policy, and said, you know, pay us back. The Supreme Court, this Court was then, one of the issues it considered was, did the exemption that the garage policy had under 601.B.6 exempt the garage policy from the omnibus requirement of 317.B.2. This Court said no. That even though that exemption is found in 601.B.6, policies still must comply with motor vehicle liability policies, still must comply with the omnibus requirement. And if 601.B.6 doesn't provide an exemption for omnibus. Was there a public policy rationale there? Yes. The finding that the garage liability policy, the universal underwriters policy, was mandated to provide omnibus coverage was based upon this Court's interpretation of 317.B.2, which is the public policy of this State to provide omnibus coverage in all motor vehicle liability policies. How do you assess the fact that in Illinois, anyone who's in the business of transporting property for hire is required to maintain appropriate insurance as defined by the ACC as a precondition to license it? Would that do away with the public policy problem with respect to a specific exemption of 601.B.2? I don't think it does away with the public policy application. It does or you don't think it does? I'm sorry, it doesn't, Your Honor, because we are looking at a situation where, and this Court has acknowledged as much in progressive universal. The fact that the Illinois regulations require all vehicles to maintain motor vehicle liability coverage, everybody who operates a vehicle under the State's law is supposed to maintain coverage. But that's no guarantee that at the time of the accident the policy will still be in place, that there will be coverage in existence. Counsel, but it doesn't, I mean, common sense would say that the omnibus clause wouldn't be effective at all if you have insurance someplace else, like under this trucker's situation. So why would you have to have the omnibus kick in? To ensure that the public is protected. But we know that the truckers are insured. Well, we know that the licensing requirements for obtaining a license to operate a truck in the State of Illinois requires that the trucker provide proof of insurance. But that doesn't guarantee that at the time of the accident that policy hasn't lapsed. But that's true for anybody who has insurance, even under the omnibus. Well, the omnibus provision ensures that there will be coverage available to those who are injured by the operator of the vehicle. And we cite in our brief the Royal Indemnity case from the New York Court of Appeals, where the New York Court of Appeals considered the exact same argument that Zurich's making here, that DOT regulations, DOT licensure ensures that we're not going to have an uninsured loss, because in order to maintain, to obtain and maintain your DOT licensure, you have to provide proof of insurance. And the New York Court of Appeals in Royal Indemnity rejected that argument for the simple reason that the fact that the law requires you to maintain insurance is no guarantee that at the time of the accident that insurance policy will be in place. The omnibus provision requirement applying to the Zurich policy in this case would ensure that there is coverage in place at the time of the accident. Is 601B2 then just written right out of the statute, or can you come up with an example of when it would apply? Well, I think it would apply. What the exemption, one of the things the exemption does is it allows, you know, like trucks containing ICC requirements to have higher limits than those stated in 601A. 601A says the policy has to have the 204015 set forth in 7203. And the exemption clearly states that for vehicles required to, you know, file proof of insurance with the ICC, the ICC can set what those minimum requirements should be. And in this case, the ICC adopted the DOT requirements, which is where we find the $750,000. So that's an instance where, you know, we see the exemption found at 601B2 to be applicable. I think there's another important point to make here to consider when, you know, when you're looking at the ICC. And when we're talking about public policy and the requirement that commercial trucks maintain or include that requirement in their policies. And that is we're talking about the construction of the statute. That's what this court did in universal underwriters in that opinion. That's what the first appellate court did in our case below. It looked at 317 and said, this provision provides a definition for the requirements of motor vehicle liability policies and it applies throughout the act. The commercial transportation law is part of that act. And there's no reason to now say that, well, even though it, the requirement for commercial vehicle liability is part of that act, or omnibus coverage is found in 317, 317 applies throughout the act. It doesn't apply to another chapter of the act, which is the commercial transportation law. That's how this court interpreted 317 and that's how the appellate court interpreted it as well, following this court's lead. Another point I think to make regarding what the Zurich policy is, is that, you know, there's a lot of different things that the Zurich policy is doing. And if we acknowledge and we accept that omnibus coverage is the public policy of this state, that this court in universal underwriters and state farm versus Smith and state farm versus Illinois farmers and progressive universal versus liberty mutual has acknowledged and held that omnibus coverage must be written into every motor vehicle liability act. And if we acknowledge that omnibus coverage is the public policy, what Zurich has done with their reciprocal coverage provision is they've avoided the statutory requirement of omnibus coverage by pointing to the coverage in another insurance policy. And if the Zurich policy violates public policy because it denies permissive use coverage in this case, then the Zurich policy violates public policy. And if the Zurich policy violates public policy because it denies permissive use coverage in this case, if it avoids that statutory requirement or it's void because it violates that statutory requirement, it shouldn't be an excuse or a defense that some other coverage, some other policy is out there and is available to provide coverage. So it's your argument that universal underwriters decides this case? I think universal underwriters decides this case. I think progressive universal versus liberty mutual decides this case. And progressive universal, this court went back and it looked at universal underwriters and it looked at state farm versus Smith. And the court said, reexamining those opinions and reexamining 317B2, the court said, well, it doesn't matter. What 317B2 does is it removes from the coverage determination whether the vehicle is being operated by a permissive user. And what the Zurich policy has done is it's put the permissive user back into the coverage determination. And under progressive universal, that isn't appropriate and the policy, you know, it violates public policy. The Zurich reciprocal coverage provision does because it denies permissive use coverage in this case. And therefore, the provision is void and inapplicable. And we thought, I think one of the issues that has been raised is, well, it's inconsistent with the regulatory scheme governing commercial truckers to incorporate an omnibus requirement into the insurance policies covering truckers. But the problem with that argument is, number one, there's no statutory basis for making it. There's nothing in the commercial transportation law, nothing in the Illinois vehicle code that would suggest that it's inconsistent or in conflict to apply 317B2 to insurance requirements in the commercial transportation law, which are in Chapter 18. But also, I mean, the regulations that Zurich points to, to establish this inconsistency or conflict, many of them, most of them, I'd submit, have as their goal, as their purpose, the protection of the public. This court has consistently stated that the purpose of omnibus coverage is to protect the public. So there can't be a conflict or an inconsistency in applying an omnibus requirement to a trucker's liability policy based upon the regulatory scheme, because the purposes of the regulatory scheme and the purposes of omnibus coverage are the same. And finally, the argument that Zurich makes to show this inconsistency or conflict is that, well, the policy limits applicable to commercial truckers are $750,000. And if this court were to affirm the appellate court and find that omnibus coverage is required in truckers' liability policies, then the permissive users of trucks would only be given $20,000, $40,000 coverage, the general statutory minimum. But this court, in its progressive universal, in its examination of the John Deere case and the Snyder versus Fuller case, clearly states that when the legislature has established a specific policy limit for a specific class of vehicles or type of operation, it's that specific limit that will apply and not the more general limit that's found in 7203. So you're not going to have a situation here where Zurich could argue that, well, we'll provide a specific policy limit to provide omnibus coverage to the permissive users, but we're only going to give them the $20,000, $40,000. Under this court's interpretation of the Illinois Vehicle Code, they couldn't do that. The permissive users would get the statutory minimum, which is $750,000. We, in terms of two of the arguments that Zurich raised, and I'll touch on this briefly, we argue in our brief that two of the arguments that Zurich has presented to this court were waived. They were made for the first time in this court. And now we address the merits of both, because obviously waiver is a restriction on the parties and it's not a restriction on the court. But the first issue that's waived is the issue of conflict or inconsistency. Zurich argued that the statutes or the regulations, the DOT regulations adopted by the ICC, show the inconsistency of including omnibus requirements for commercial trucks. As we point out, that argument was not made in the trial court. It's not supported in the record. It was first presented after oral argument in the first district when Zurich attempted to supplement the record by filing the DOT regulations that it relies on in this court to support this argument. The first district refused the motion to supplement the record. So that argument, the inconsistency conflict argument, was waived. It's not supported in the record. And the other argument that's waived is the separation of powers argument. That argument wasn't made to Judge Kinnaird. It wasn't made in the first district. Zurich says it was created by the first district's opinion. Well, that just can't be. I mean, if the court system, if the judiciary doesn't have the power to require commercial trucks to carry omnibus coverage, if that power rests with the ICC, that's an argument that should have been made to Judge Kinnaird. And Judge Kinnaird then addressed it. And even if it was waived there, it should have been made to the first district. It wasn't made in either court. It was first made here. And so it's waived. And I think it really lacks merit, because what the first district did below in this case was follow the dictates of this court and universal underwriters and its progeny and construed the provisions of the Illinois Vehicle Code to find that omnibus coverage is required for policies for commercial trucks. That's a uniquely judicial function construing and applying statutes. The first district did not create public policy. The requirement of omnibus coverage existed long before Zurich versus Key, Carthage and West Bend came to the court's attention. Let me ask you this to make sure I understand. If we were to conclude that the financial responsibility law does exempt commercial truckers, are we then left with a situation where the reciprocal would provide no coverage? Or how does that play into this, with the reciprocal? Well, the, I suppose what would happen, Your Honor, is because in this case, West Bend provided coverage to Key, Carthage. So in this case, we don't have an uninsured loss. But the Zurich reciprocal coverage provision can be read to find that a trucker who is uninsured will not be covered. He will not get permissive use coverage under the Zurich policy, because if he's uninsured, if his policy is lapsed, if his policy is void, if his insurer has become insolvent, then that trucker is not providing reciprocal coverage back to the Zurich name insured, and we have an uninsured loss. So the reciprocal coverage provision doesn't guarantee, we're not talking about an other insurance clause here. We're not comparing and considering whether the Zurich policy provides primary or the West Bend provides primary or both provide primary. This isn't another insurance provision. It's an exclusion. The trucker doesn't get permissive use coverage unless his policy covers the Zurich name insured. And as we point out, there's no guarantee that a policy that's in place when the trucker is licensed is going to be in place when the accident occurs. Thank you. Your Honors, I have a few points on rebuttal. First and foremost, the analysis of this case has to be governed by a statutory analysis. Simply say that you can extend the universal underwriters case to the facts and circumstances here is inappropriate if there's not a legislative support for the extension of omnibus coverage to commercial truckers. We have set forth in detail, both in our brief and our argument today, that no such support exists. And there is no counter to that conclusion. The truth of the matter is the universal underwriters courts, it did not address the circumstances that is present in this case. It did not interpret the commercial transportation law or the relationship or lack thereof that it has with the financial responsibility law. And I think it's crucial to remember that the uniform, or excuse me, the Illinois vehicle code is not an individual statute. It is a compilation, a recodification of separately enacted provisions. And there is no statutory basis for the first district's ruling here that 317 of the financial responsibility law should apply to the commercial transportation law. I think also that it's important for the court to recognize that, as Justice Thomas had raised, trying to apply the rule in universal and the interpretation of 601B6 of the exception to the mandatory insurance requirement uniformly across all the different factors that are referenced in 601B would lead to some very anomalous results. I mean, not only would you invalidate and express exception for vehicles that are required to file proof of insurance with the Illinois Commerce Commission, one of the exceptions is for implements of husbandry. That's farm equipment. So in effect, if the first district's ruling can be read to mean that now farm equipment has to comply with 601A and it has to have omnibus coverage, and it's our responsibility to express language of the statute. The other notion is West Bend invites this court to make public policy and to do so under the possibility that truckers are operating in this state with canceled insurance policies. And they cite an out-of-state case for that proposition, the Royal opinion. Two things that make Royal inapplicable to this case. First, under the New York traffic laws, commercial vehicles are required to have omnibus coverage in New York. That's cited in the opinion. Here in Illinois, there's not that same proper legislative mandate by virtue of the arguments that we've made here today. In addition, the Royal Court said that despite this comprehensive scheme of federal regulations that govern commercial trucking, there may be canceled insurance policy out there. I would submit that that's not possible in any reasonable circumstances under Illinois law. And what I've done, anticipating that the only real argument that West Bend can make is that canceled trucker policy should be the basis for the extension of omnibus coverage, is just to take a look at the provisions that govern motor carriers of property. And I'll note that Chapter 92 of the Illinois Administrative Code sets forth the rules that implement the mandatory coverage requirement for commercial truckers. If you take a look at Section 1425.20, it requires that a trucker post a certificate of insurance with the ICC, not only before it's given a license to operate, but that certificate of insurance has to be maintained during the course of operation. Under Section 1425.10, that certificate of insurance has to remain in effect unless and until cancellation notice is given to the trucker. And that certificate of insurance has to be given to the ICC. So there's no circumstance where the regulatory authority would be unaware of a commercial motor carrier of a property operating in this state without required insurance. I'll also note that the federal regulations that are adopted under the statute, and I'll cite 49 CFR 387.17, provide that the insurance of certificate that's on file with the ICC is going to remain in full force of, in effect, irrespective of what may happen between the insurance company and the insured with respect to issues that normally lead to cancellation, unless and until the agency receives notice, and then notice is given to the carrier. The carrier has to post new insurance or immediately its license and registration to operate are canceled under that provision. In addition, the provision provides for civil fines of up to $11,000 per year. $11,000 per day for violations. And I'll also note that these provisions are enforced both by the ICC and the Illinois State Police. So the notion that this court should predicate its decision upon the possibility that a motor carrier of property is operating with a canceled certificate of insurance, I think is a misnomer, and certainly not something that this court should predicate its ruling on. Finally, just with respect to waiver, there's been no waiver here. All of the information, authority, and arguments that Zurich submits in support of its position in this court were included in its Petition for Leave to Appeal, which was granted. This court has the discretionary authority to consider whatever it deems relevant in order to decide this case. I'd also note that Zurich was the appellee in the First District, and as such, did not frame the issues for purposes of that appeal. And it has a right to raise new issues or any issues that it deems appropriate that are supported by the record in this court. The last point that I'd like to make is in response to a question that was raised earlier about whether or not the reciprocal coverage provision has a basis to apply if, in fact, 601B2 applies. And Zurich has argued that to the extent that the mandatory insurance provisions in 601A do not apply to the commercial transportation law by virtue of 601B2, section 317 does not apply. Because this court previously ruled that 317 contains a definition of motor vehicle liability policy, and that definition is what is required by 601A. So if 601A does not apply, 317 does not apply. Thank you, counsel.